# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| ASHTON PLASTIC PRODUCTS, INC., <br> **Plaintiff,** | Civil Action No. C-1-02-529 |
| **v.** | (JUDGE DLOTT) |
| FUSITE CORPORATION, <br> **Defendant.** | (Magistrate Judge Sherman) |

### DEFENDANT FUSITE CORPORATION'S MOTION FOR SUMMARY JUDGMENT

Defendant Fusite Corporation respectfully moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing the Amended Complaint of Plaintiff Ashton Plastic Products, Inc., with prejudice. As set forth in the following memorandum, Plaintiff has offered insufficient evidence to prove the elements of its claim. There is no genuine issue as to any material fact, and Defendant Fusite Corporation is entitled to judgment as a matter of law.

____s/ Jerome J. Metz, Jr._____

| | |
|---|---|
| **OF COUNSEL:** <br> Jean Y. Teteris (0023022) <br> **PORTER WRIGHT MORRIS & ARTHUR, LLP** <br> 41 South High Street <br> Columbus, Ohio 43215 <br> (614) 227-2189 (614) 421-2100 (fax) <br><br> Arthur F. Golden <br> Ronan P. Harty <br> Arthur J. Burke <br> **DAVIS POLK & WARDWELL** <br> 450 Lexington Ave. <br> New York, NY 10017 <br> (212) 450-4000 (212) 450-3800 (fax) | Jerome J. Metz, Jr. (0022974) <br> Mark E. Elsener (0023013) <br> *Trial Attorneys for Defendant Fusite* <br> *Corporation* <br> **PORTER, WRIGHT, MORRIS & ARTHUR LLP** <br> 250 East 5th Street, Suite 2200 <br> Cincinnati, Ohio 45202-5117 <br> 513/381-4700  (513) 421-0991 (fax) |

**MEMORANDUM**

## I.  INTRODUCTION AND PROCEDURAL HISTORY

In this case, a disappointed former supplier of a product (Ashton Plastic Products, Inc., ("Ashton")) has resorted to the antitrust laws in an attempt to extract concessions from its former customer and present competitor (Fusite Corporation ("Fusite")).  But the Plaintiff has taken few steps to pursue its case.  Discovery deadlines have come and gone without action.  Discovery requests have gone unanswered by Ashton.  The result is that the Plaintiff has adduced no evidence that can justify this case further occupying this Court's attention or this Defendant's time and expense.  The tool of summary judgment should now be employed to bring this case to an end.[1]

Plaintiff Ashton filed its Complaint on July 17, 2002, alleging that Defendant Fusite (i) unlawfully tied the purchase of heating, ventilation and air conditioning ("HVAC") compressor terminal blocks ("blocks") to the purchase of HVAC compressor glass-to-metal seals ("seals") in violation of Section 1 of the Sherman Act[2] and (ii) was attempting to monopolize the market for blocks in violation of Section 2 of the Sherman Act.[3]  As alleged in the Complaint, Ashton formerly supplied Fusite with blocks for resale.  Fusite terminated this relationship, however, and Ashton entered the business of selling blocks directly to customers in competition with Fusite.[4]  Ashton subsequently filed an Amended Complaint adding a claim that Fusite had

---

[1]    On December 2, 2003, Ashton filed with this Court a Motion for Voluntary Dismissal Without Prejudice. Because of Ashton's neglect in prosecuting this case and the legally insufficient nature of its claims (as explained in detail in this Summary Judgment Motion), Defendant Fusite intends to oppose the Dismissal Motion.  Fusite is entitled to repose on these claims and dismissal with prejudice is the only fair result here.

[2]    15 U.S.C. § 1.

[3]    15 U.S.C. § 2.

[4]    *See* First Amended Complaint (doc. 10), ¶¶ 11-12.

falsely and misleadingly represented that its blocks were certified by Underwriters Laboratories ("UL") in violation of Section 43(a) of the Lanham Act,[5] the Ohio Deceptive Trade Practices Act,[6] and the common law of unfair competition.  Fusite timely filed Answers denying the central allegations of both the Complaint and the Amended Complaint.[7]

The time allotted for discovery in this case has expired.  During discovery, Ashton served two document requests and one set of interrogatories, which Fusite answered.  Fusite served two document requests and two sets of interrogatories.  Ashton has neither answered nor objected to Fusite's second document request or second set of interrogatories.  Likewise, Ashton has taken no depositions.  Extended deadlines for designating expert witnesses and for expert discovery have expired without any such designation or discovery by Ashton.  Ashton has adduced no lay or expert testimony to support its claims, and has failed to respond to important discovery requests by Fusite.  As a result, the limited evidence in the record is insufficient as a matter of law to permit this case to proceed to trial.  All of Ashton's claims should be dismissed and summary judgment should be entered in favor of Fusite.[8]

## II.     SUMMARY JUDGMENT STANDARD

In deciding this Motion, the Court should consider that it is the purpose of the federal rules "to secure the just, speedy and inexpensive determination of every action."[9]  Summary

---

[5]     15 U.S.C. § 1125(a).

[6]     Ohio Rev. Code §4165.01 *et seq.*

[7]     *See* Answer (doc. 2); Answer to First Amended Complaint (doc. 13).

[8]     It is important to note that, contrary to what Ashton states in its Motion for Voluntary Dismissal Without Prejudice, discovery in the matter was never stayed.  Instead, on May 22, 2003, Ashton and Fusite (at Ashton's request) jointly moved to extend the then-existing discovery deadlines so as to allow time for possible settlement discussions.  The settlement discussions were short and fruitless.  Ashton chose to take no further discovery after the Court, on June 2, 2003, granted the joint motion to extend the discovery deadlines.

[9]     Fed. R. Civ. P. 1.

judgment is "an integral part" of accomplishing that purpose.[10]  In fact, in the era of "notice pleading," the motion for summary judgment has become the principal tool "by which factually insufficient claims … [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."[11]  Summary judgment should be granted when,

> based on the evidence produced, the Court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  …  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment…."  The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denial of his pleadings, but … must set forth specific facts showing that there is a genuine issue for trial."[12]

Although the moving party has the initial burden of showing that no genuine issue of material fact exists, once this requirement is satisfied the non-moving party bears the burden to present evidence that there is a genuine issue for trial.[13]  The non-moving party must then produce sufficient evidence to reasonably support a jury verdict in its favor, and not just "some metaphysical doubt as to material facts."[14]

On this motion for summary judgment, Fusite need not produce affirmative evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."[15]  "[T]he absence of any relevant

---

[10]   *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

[11]   *Id.*

[12]   *Putnam v. Davies,* 169 F.R.D. 89, 95 (S.D. Ohio 1996) (Dlott, J.) (*citing* Fed. R. Civ. P. 56(c) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

[13]   *Celotex,* 477 U.S. at 323-24.

[14]   *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[15]   *Celotex, supra*, 477 U.S. at 325.

probative evidence in support of a litigant's antitrust claims will expose such claims to summary judgment disposition."[16]  The evidence must be more than Ashton's own pleadings.[17]

Because a motion for summary judgment goes beyond the pleadings, factual specificity is required of a party opposing the motion.[18]  Thus, to defeat a summary judgment motion, the non-moving party must point to concrete evidence in the record that supports each essential element of his case.[19]  A party who fails to provide such evidence is not entitled to a trial and the moving party is entitled to summary judgment as a matter of law.[20]  The fact that this is primarily an antitrust case does not change any of these fundamental principles.[21]

## III.    ARGUMENT

Applying these standards, the Court should grant Fusite's motion for summary judgment because the record evidence is not sufficient to establish elements that Ashton must prove at trial to prevail.  The record is deficient for two reasons.  First, as discussed below in § III. C, Ashton's responses[22] to Fusite's first set of document requests and interrogatories[23] regarding Ashton's tying claim offer only inadmissible hearsay which, even it were accepted by the Court, is insufficient as a matter of law to demonstrate the elements of a tying claim.  Second, Ashton

---

[16]    *Bouldis v. Suzuki Motor Corp.,* 711 F. 2d 1319, 1324 (6th Cir. 1990) (*quoting Davis-Watkins Co. v. Service Merchandise,* 686 F. 2d 1190, 1197 (6th Cir. 1982)).

[17]    *See Ashbrook v. Block,* 917 F. 2d 918, 921 (6th Cir. 1990); *accord Putnam v. Davies,* 169 F.R.D. 89, 95 (S.D. Ohio 1996) (Dlott, J.).

[18]    *Celotex, supra,* 477 U.S. at 322-323.

[19]    *Id.*

[20]    *Fed. R. Civ. P.* 56(e).

[21]    *See Stratmore v. Goodbody,* 866 F. 2d 189, 191 (6th Cir. 1989) ("the Supreme Court and this Court have tempered a reluctance to grant summary judgment in antitrust litigation with the recognition that summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules.") (internal citations omitted).

[22]    *See* Ex. B.

[23]    *See* Exs. C and D.

simply failed to respond to Fusite's second set of document requests and interrogatories.[24]  Those discovery requests sought, *inter alia*, any evidence or support Ashton had for its Lanham Act claims or for its alleged product and geographic markets.

Because of Ashton's failure in one instance to respond to Fusite's discovery requests with admissible evidence and in the other instance its failure to respond at all, Ashton has foregone its opportunity to create a record supporting its claims, and may not use this motion as an opportunity to cure its discovery failures.[25]  As a result, there is no evidence that Ashton has been injured at all, let alone in a manner to confer standing to sue under the Sherman or Lanham Acts.  Ashton also lacks evidence to support the most basic elements of its tying claim.  In particular, Ashton has not demonstrated and cannot demonstrate (i) that Fusite's sale of seals was "conditioned" on the purchase of blocks, or (ii) that Fusite has "market power" in a relevant antitrust market.  Indeed, there is no evidence in the record, expert or otherwise, to meet Ashton's threshold burden of proving its alleged product and geographic markets, despite the fact that Ashton was served with discovery requests on these crucial issues.  Nor is there sufficient evidence to support Ashton's attempted monopolization claim.  Ashton has no evidence that Fusite (i) specifically intended to monopolize the market for blocks, (ii) engaged in any anticompetitive behavior, or (iii) had a dangerous probability of success in this alleged monopolization attempt.  On Ashton's unfair competition claims, despite related discovery requests, Ashton has offered no evidence that Fusite made any false or misleading representations about its blocks.  All of these claims should accordingly be dismissed.

---

[24]  *See* Exs. E and F.

[25]  *See* Fed. R. Civ. P. 37(c)(1).

## A. ASHTON CANNOT SHOW STANDING OR ANTITRUST INJURY

Ashton cannot show standing or antitrust injury. While at the pleading stage general allegations of injury are sufficient, at the summary judgment stage the plaintiff may no longer rest on mere allegations, but rather must set forth specific evidence that it has been injured by the defendant's conduct and that the requested relief will redress the injury.[26] Ashton failed to respond to Fusite's document requests and interrogatories seeking evidence supporting Ashton's claim of injury.[27] Ashton thus has no evidence of injury beyond its allegations, nor any evidence that any injury was proximately caused by Fusite's alleged conduct, such that the remedy sought would address the injuries alleged, and thus does not possess standing to pursue any of its claims.

Furthermore, not only can Ashton not demonstrate the general injury and proximate cause requirements necessary for standing, it cannot demonstrate the "antitrust injury" necessary for standing to sue under the antitrust laws. In order to assert an antitrust claim, a private plaintiff such as Ashton must show not only that Fusite's alleged conduct proximately caused injury in fact to Ashton's business or property, but also that the injury is "of the type the antitrust laws were designed to prevent." Ashton can only recover if its injury stems from a competition-reducing aspect or effect of Fusite's alleged conduct.[28] Demonstrating mere injury-in-fact to Ashton (for example, in the form of lost sales) is insufficient because the antitrust laws protect

---

[26]  *See Kal Kan Foods v. Iams Co.*, 197 F. Supp. 2d 1061, 1066 (S.D. Ohio 2002) (discussing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)).

[27]  *See* Ex. E (Fusite Second Request for Production of Documents) at 5 (seeking "All documents supporting or otherwise concerning or relating in any way to the allegation that Ashton has been injured in its business and property by Fusite's alleged conduct."); Ex. F (Fusite Second Set of Interrogatories) at 4-5 (seeking all communications related to the allegation that "customers that specified UL certification for their parts would not have purchased from Fusite absent such certification, and would have purchased from Ashton" and asking Ashton to identify "any other facts supporting those allegations.").

[28]  *See In re Cardizem CD Litig.*, 332 F. 3d 896, 909-910 (6th Cir. 2003) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 489 (1977)).

"*competition*, not *competitors*."[29]  Ashton has no evidence to satisfy this requirement, and thus cannot demonstrate antitrust injury sufficient to confer standing to sue on its tying and attempted monopolization claims.  Indeed, Ashton failed to respond to Fusite's discovery request on this issue.

As a result, summary judgment should be granted on standing and antitrust injury grounds alone.  However, as discussed below, even if Ashton did have standing to assert its claims, its claims would still fail as a matter of law because Ashton has no evidence to prove any of the elements of those claims.

B.  ASHTON CANNOT PROVE ITS TYING CLAIM

It is not clear from Ashton's Complaint whether Ashton asserts that the alleged tying arrangement is *per se* unlawful or that it should be invalidated under a "rule of reason" antitrust analysis.  The principal difference between a *per se* analysis and a rule of reason analysis is the necessity of demonstrating anticompetitive effect.  Under a *per se* analysis, upon a showing that the defendant possesses market power in the tying market, the court may invalidate the defendant's tying arrangement without an examination of its effect on the tied market, whereas under a rule of reason analysis, a plaintiff need not demonstrate that the defendant possesses market power in the market for the tying product, but bears the burden of demonstrating that the tying arrangement is an unreasonable restraint on competition in the market for the tied product.[30]  For purposes of this motion, it makes little difference which type of tying

---

[29]    *Virtual Maintenance, Inc. v. Prime Computer, Inc.*, 957 F.2d 1318 (6th Cir. 1992), *vacated on other grounds*, 506 U.S. 910 (1992) (*quoting Atlantic Richfield Co. v. U.S.A. Petroleum Co.*, 495 U.S. 328 (1990)) (emphasis in original).

[30]    *See Virtual Maintenance, Inc. v. Prime Computer, Inc.*, 957 F. 2d 1318, 1323, 1329-30 (6th Cir. 1992) *vacated on other grounds* 506 U.S. 910 (1992).

arrangement Ashton has alleged, because Ashton has produced insufficient evidence to meet either standard.

### 1. There Is No Evidence that Fusite Conditioned the Sale of Seals on Purchase of Blocks

The most basic element of a tying claim, whether brought under the *per se* rule or the rule of reason, is proof that the defendant has engaged in tying—*i.e.*, that it has conditioned the sale of one product (the "tied" product) on the buyer's purchase of another product (the "tying" product).[31] Where the buyer is free to take either product by itself there is no "tying" even though the seller may also offer the two items as a unit at a single price.[32]

There is simply no evidence in the record that seals could not be purchased from Fusite separately from blocks, or that any purchaser was ever forced to buy blocks from Fusite as a condition of purchasing Fusite's seals. In the course of discovery, Fusite served interrogatories asking Ashton to identify evidence supporting its tying allegations.[33] Ashton responded by describing conversations between Ashton's president (Richard Kelch) and representatives of two potential customers during which these representatives allegedly told Kelch that their employer had decided not to buy blocks from Ashton because they received "package" or bundled discounts from Fusite based on the purchase of both blocks and seals from Fusite.[34] There are at least two basic and insurmountable deficiencies with this "evidence" of tying.

---

[31]  *See Beard v. Parkview Hosp.*, 912 F. 3d 138, 140 (6th Cir. 1990) (citing *Northern Pacific Ry. Co. v. United States*, 356 U.S. 1 (1958)).

[32]  *See Bouldis*, 711 F. 2d at 1331 (rejecting tying claim where alleged tying product "could be purchased freely by any dealer").

[33]  *See* Ex. C (Fusite First Request for Production of Documents) at 1, Ex. D (Fusite First Set of Interrogatories) at 1.

[34]  *See* Ex. B (Ashton Discovery Responses) at 1:

  The reason given was that there were certain glass-to-metal seals that Trane needed and could only get from Fusite, and Fusite had agreed to give certain price reductions to Trane on an "all or nothing" basis – that is, the prices would hold only if Trane bought their current requirements of

(…continued)

*First*, Ashton's "evidence" is inadmissible hearsay – consisting solely of alleged statements made to Ashton's president by representatives of potential customers out of court and not under oath. The Court may not consider hearsay evidence on a motion for summary judgment.[35] Accordingly, Ashton has set forth no competent evidence in response to Fusite's discovery requests to demonstrate the existence of a restraint, and its evidence is insufficient as a matter of law to demonstrate an unlawful tie under either the *per se* rule or the rule of reason.

*Second*, even if Ashton's evidence were admissible and taken as true, Ashton's tying claim would still fail because this evidence is insufficient as a matter of law to establish tying. Ashton does not state in its interrogatory responses that Fusite refused to sell seals to customers unless those customers also purchased blocks from Fusite. Instead, Ashton appears to claim that the "package" or "bundled" discounts offered by Fusite were so attractive that customers were effectively "forced" to buy both products together. The Supreme Court has warned, however, that courts should be highly suspicious of antitrust claims premised on discounting because "cutting prices in order to increase business often is the very essence of competition" and "mistaken inferences" of antitrust violations "chill the very conduct the antitrust laws are designed to protect."[36]

Accordingly, courts consistently hold that, so long as a customer may buy two products separately, there is no tie-in – even if the customer must pay a higher price for the products

---

(continued…)

terminal blocks and glass-to-metal seals from Fusite. Mr. Wilhelmy explained to Mr. Kelch that Trane could not afford to be shut off from their supply of glass-to-metal seal terminals or pay an exorbitant price for the glass-to-metal seal terminals not available from Vitrus, so Trane could not make the switch from Fusite to Ashton for terminal blocks. Trane was able to and has, however, purchased a certain amount of both the common and "60" terminal blocks from Ashton as "overflow" beyond their contracted for amount with Fusite.

[35]   *See U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F. 3d 1185, 1189 (6th Cir. 1997).

[36]   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986).

separately than if it had purchased the package of products.[37]  In order to demonstrate a tie-in based upon bundled pricing, a plaintiff must *at a minimum* produce evidence showing that the price discount is so substantial that it effectively induces "all rational buyers" to purchase the two products together.[38]  Put another way, the plaintiff must show that purchasing the bundled products together is the "only viable economic option."[39]  Ashton has come forward with no such evidence in response to Fusite's discovery requests.  Indeed, Ashton cannot deny that it has made sales of blocks to customers (including the customers that were the subject of the alleged tie)— making it clear that "all rational buyers" have *not* chosen to purchase blocks and seals as a package from Fusite.

Lastly, against the void left by Ashton's discovery failures, Fusite is submitting along with this motion affidavit evidence contradicting Ashton's tying allegations.[40]  Mr. Gilligan, Fusite's Vice President of Sales and Marketing, affirms in the affidavit that

> Fusite has never conditioned the sale of glass-to-metal seals on the purchase of terminal blocks, nor has Fusite ever "forced" a customer to purchase terminal blocks if it wanted to purchase glass-to-metal seals.  Terminal blocks and glass-to-metal seals are and have been available from Fusite for separate purchase at all times, and customers can and do purchase Fusite glass-to-metal seals without purchasing Fusite terminal blocks and vice versa.[41]

Mr. Gilligan also affirms that

> From time to time, Fusite may offer price discounts to customers who purchase certain volumes of glass-to-metal seals or terminal blocks and to customers who buy certain volumes of both products from Fusite.  At no time do these price discounts represent a price reduction below Fusite's cost of producing the

---

[37]   *See, e.g., United States v. Westinghouse Elec. Corp.*, 471 F. Supp. 532, 545 (N.D. Ill. 1978).

[38]   *See Virtual Maintenance Inc.*, 957 F. 2d at 1323.

[39]   *See Marts v. Xerox, Inc.*, 77 F.3d 1109 (8th Cir. 1996); *Amerinet, Inc. v. Xerox Corp.*, 972 F. 2d 1483, 1500 (8th Cir. 1992).

[40]   *See* Ex. A (Gilligan Affidavit).

[41]   Ex. A (Gilligan Aff.) at 1.

10

products.  Furthermore, the availability of these discounts does not "force" any customer to buy both products from Fusite, as is evidenced by the fact that some customers choose to buy only one of the products from Fusite.[42]

This affidavit evidence undermines all of the essential elements of Ashton's tying claim. Because Ashton relies only on unsubstantiated allegations, Fusite's affidavit evidence is alone sufficient to defeat Ashton's claim.

### 2. There Is No Evidence that the Alleged Tie-in Had a "Not Insubstantial" Impact on Commerce

Under both the *per se* rule and rule of reason, a plaintiff also must produce evidence that the alleged tie-in had a "not insubstantial" effect on interstate commerce.[43]  Ashton has offered no evidence regarding the dollar value of the allegedly tied sales of blocks, and as a result, it cannot prove that the impact on commerce of the alleged tying conduct was anything but *de minimis*.[44]  Fusite sought discovery regarding the volume of block sales by Ashton and its competitors, but Ashton did not respond.[45]  Having failed to answer this discovery request, the factual record is insufficient for Ashton to prove this element of its tying claim and summary judgment should enter in favor of Fusite.

### 3. Ashton Cannot Prove a *Per Se* Tying Claim

Even if Ashton had evidence to show a tying arrangement and a sufficient impact on commerce, a *per se* unlawful tie under Sherman Act § 1 also requires a showing that the seller has sufficient "market power" in relevant antitrust tying product and geographic markets to

---

[42]  *Id.* at 2.

[43]  *See Bouldis*, 711 F. 3d at 1330.

[44]  *See Stone v. William Beaumont Hosp.*, 782 F. 2d 609, 619 (6th Cir. 1986) (noting that "substantial impact" is measured in terms of the dollar volume of sales affected).

[45]  See Ex. E (Fusite Second Request for Production of Documents) at 4.

restrain appreciably competition in a relevant antitrust tied product market.[46]  Ashton cannot meet this fundamental requirement for a *per se* tying claim because Ashton has no proof, expert or otherwise, to support its allegation that the relevant product markets are the markets for seals and blocks, or that the relevant geographic market is the United States.[47]  Ashton failed to respond to Fusite's discovery requests regarding Ashton's alleged product and geographic markets,[48] and failed to adduce timely expert testimony on the issue, and therefore has no evidence to support its allegations regarding relevant antitrust product and geographic markets. "Because the relevant market provides the framework against which economic power can be measured, defining the product and geographic markets *is a threshold requirement*."[49]

Accordingly, even if Ashton could demonstrate that the sale of Fusite seals had been conditioned on the purchase of blocks from Fusite, without a demonstration of the relevant antitrust product and geographic markets, such evidence of tied sales would be insufficient to state a *per se* tying claim.  "Proof that a defendant forced a consumer to accept a tying arrangement is not alone adequate to establish an illegal tie."[50]  As a result, the Court should grant Fusite's motion for summary judgment with respect to Ashton's *per se* tying claim.

### 4.  Ashton Cannot Prove A Rule of Reason Tying Claim

To the extent that Ashton seeks to argue that the alleged tying arrangement is not *per se* unlawful, but rather should be invalidated under a "rule of reason" antitrust analysis, its claim also fails and should be dismissed.  As a general matter, in evaluating a rule of reason claim, the

---

[46]    *See Bouldis*, 711 F. 2d at 1330.

[47]    *See* First Am. Complaint ¶¶ 7-8.

[48]    See Ex. E (Fusite Second Request for Production of Documents) at 5-6.

[49]    *Virtual Maintenance, Inc. v. Prime Computer, Inc.*, 957 F. 2d at 1324 (6th Cir. 1992) (emphasis added).

[50]    *Virtual Maintenance*, 957 F.2d at 1323.

Court must determine "whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its conditions before and after the restraint was imposed, and the restraint's history, nature, and effect."[51]  In order to prove an unlawful tying arrangement under a rule of reason antitrust analysis, Ashton must demonstrate that the tying arrangement is "an unreasonable restraint on competition in the relevant market."[52]

As discussed above, and despite being requested to do so in the discovery process, Ashton has not come forward with the evidence necessary to define the relevant product and geographic markets, and thus cannot even begin to demonstrate that Fusite's alleged conduct actually has an anticompetitive effect in an interbrand market.  Moreover, if Ashton had evidence to satisfy the market definition requirement, it still could not demonstrate anticompetitive effect.  For example, if the Court were to evaluate the alleged conduct as comprised, at least in part, of a requirements contract[53], in order to demonstrate that the exclusive dealing nature of the arrangement had an anticompetitive effect in the market for blocks, Ashton would need to show that, because of Fusite's exclusive dealing arrangements, a significant portion of all available block purchasers are foreclosed from buying blocks from Ashton.[54]  Despite Fusite's discovery requests, Ashton has come forward with no evidence to prove who the available purchasers are

---

[51]    *State Oil Co. v. Kahn*, 522 U.S. 3, 10 (1997) (describing generally the antitrust rule of reason analysis).

[52]    *Beard*, 912 F. 2d at 140 (quoting *Jefferson Parish Hosp.*, 466 U.S. at 18); *Virtual Maintenance*, 957 F. 2d at 1329.

[53]    In support of its tying claim, Ashton refers to inadmissible hearsay conversations to the effect that Trane and Fusite had entered into a contract under which Trane agreed to purchase all of its required seals and blocks from Fusite.  *See* Ex. B (Ashton Discovery Responses) at 2.

[54]    *Virtual Maintenance*, 957 F. 2d at 1330 (*citing Jefferson Parish Hosp.*, 466 U.S. at 30-31).

in the market for blocks,[55] nor does it have evidence to quantify the amount of the market that is foreclosed from buying blocks from Ashton by virtue of arrangements with Fusite. Simply put, Ashton has no evidence whatsoever of anticompetitive effect in the market for blocks.

Furthermore, even if Ashton had come forward with admissible evidence that Fusite had refused to sell seals and blocks separately, such evidence, standing alone, would be insufficient to meet Ashton's burden under a rule of reason antitrust analysis. "[E]very refusal to sell two products separately cannot be said to restrain competition. If each of the products may be purchased separately in a competitive market, one seller's decision to sell the two in a single package imposes no unreasonable restraint on either market...."[56] That is, without coming forward with evidence that seals and blocks were not available separately in the market, even if Ashton could prove the existence of a tie between the purchase of seals from Fusite and the purchase of blocks from Fusite, its rule of reason claim still would fail, because it would not have proved the tie to be unlawful.

Because Ashton can demonstrate neither the existence of a restraint, nor any anticompetitive effect in the market resulting from the alleged restraint, its claim that Fusite's conduct constitutes an unlawful tie under a rule of reason analysis should be dismissed and summary judgment should be entered on that claim in favor of Fusite.

C. ASHTON CANNOT PROVE ITS ATTEMPTED MONOPOLIZATION CLAIM

Attempted monopolization under Sherman Act § 2 occurs when a competitor, "with dangerous probability of success, engages in anti-competitive practices the specific design of

---

[55]    For example, Ashton failed to respond Fusite's request for documents "sufficient to show the price, volume, date of sale, and *purchasers* of terminal blocks sold by your company during the relevant period." Ex. E (Fusite Second Request for Production of Documents) at 4 (emphasis added).

[56]    *Jefferson Parish Hosp. v. Hyde*, 466 U.S. 2, 11 (1984).

which are to build a monopoly or exclude or destroy competition."[57]  Despite Fusite's discovery

requests, Ashton has offered no evidence to prove any of these elements.

### 1.  Ashton's Claim Fails At The Market Definition Threshold

"The first step in any action brought under § 2 of the Sherman Act is for the plaintiff to

define the relevant product and geographic markets in which it competes with the alleged

monopolizer."  *Id*.  As discussed above, despite being asked to do so, Ashton has failed to

provide any evidence whatsoever to prove its alleged product and geographic markets, dooming

its § 2 claim at this very first step.  Even if, however, Ashton's claim could pass this initial

threshold, it would still fail because Ashton has no evidence in the record to prove the remaining

elements of its attempted monopolization claim.

### 2.  Ashton Cannot Prove Anticompetitive Conduct from which an Intent to Monopolize Might Be Inferred

To prevail on an attempted monopolization claim, the plaintiff must prove a *specific*

*intent* to "destroy competition or build a monopoly."[58]  While specific intent to monopolize may

be inferred from evidence of anticompetitive conduct, it may not be inferred from legitimate

business practices aimed only at succeeding in competition.[59]  Because the record contains no

direct evidence of any anticompetitive intent on the part of Fusite, presumably Ashton relies on

the alleged "tying" of seals and blocks as the anticompetitive conduct from which the Court

should infer Fusite's intent to monopolize the market for blocks.  As discussed above, however,

Ashton has no evidence of tying or any other anticompetitive conduct, and cannot demonstrate

that Fusite's sales practices are not legitimate practices aimed only at succeeding in competition.

---

[57]    *Conwood Co., L.P. v. United States Tobacco Co.,* 290 F. 3d 768, 782 (6th Cir. 2002) (citation omitted).

[58]    *Id.* (*quoting Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F. 3d 90, 101 (2d Cir. 1998)).

[59]    *See Lorain Journal Co. v. United States*, 342 U.S. 143 (1951); *Times-Picayune Pub. Co. v. United States*, 345 U.S. 594, 626 (1952).

Because Ashton has no evidence, whether direct or circumstantial, that Fusite had the specific intent of monopolizing the market for blocks, summary judgment should be granted in favor of Fusite on Ashton's attempted monopolization claim. Furthermore, as discussed below, Ashton's proof on the other elements of its § 2 claim is also lacking.

### 3. There Is No Evidence that Fusite's Alleged Efforts to Monopolize Have "A Dangerous Probability of Success"

"A dangerous probability of success" requires market strength that approaches monopoly power – the ability to control prices and exclude competition.[60] An analysis of this element requires comparing Fusite's size, performance and policies to that of other competitors and assessing market structure and ease of market entry.[61] There is simply no evidence in the record permitting such an analysis. To take but one example, although Ashton alleged that Fusite has a dominant share in the market for seals and that the market has high barriers to entry, Ashton did not respond to Fusite's requests to substantiate those allegations with documentary evidence.[62] Such unsupported allegations are insufficient to meet Ashton's burden.

Not only does Ashton lack evidence to demonstrate "a dangerous probability of success," it lacks evidence to meet the lower threshold of demonstrating market power. An attempted monopolization claim fails if the plaintiff cannot demonstrate that the defendant has market power.[63] As discussed supra at § III. C, Ashton offered no proof, despite discovery requests on this issue, that Fusite has market power in either the market for seals or the market for blocks.

---

[60]    *See Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F. 2d 819, 823 (6th Cir. 1982).

[61]    *See White & White, Inc. v. American Hosp. Supply Corp.*, 723 F. 3d 495, 507 (6th Cir. 1983).

[62]    *See* First Am. Complaint (doc. 10), ¶ 9; Ex. E at 6 (seeking documents relating to the market allegations in Ashton's Complaint).

[63]    *See Spectrum Sports v. McQuillan*, 506 U.S. 447, 458 (1993).

Because Ashton cannot demonstrate any, let alone all, of the elements of an attempted monopolization claim – that Fusite intended to monopolize the market for blocks; that Fusite had "a dangerous probability of success" in its alleged attempted monopolization; that it engaged in anticompetitive conduct, or that it has market power – the Court should grant Fusite's motion for summary judgment on Ashton's attempted monopolization claim.

### D.  ASHTON CANNOT PROVE ITS UNFAIR COMPETITION CLAIMS

Ashton alleges that Fusite has falsely and misleadingly represented that its terminal blocks have UL certification by certifying to its purchasers that its blocks meet their specifications, which Ashton alleges require UL certification.[64]  Based on this allegation, Ashton asserts that Fusite has violated Section 43(a) of the Lanham Act,[65] and Ohio's Deceptive Trade Practices Act,[66] as well as the common law of unfair competition.  There is no evidence in the record, however, that Fusite's purchasers require that blocks be UL certified, or that Fusite has ever made any false or misleading representation that its blocks are UL certified.  As a result, Ashton cannot prove its unfair competition claims, and summary judgment should be entered in favor of Fusite on these claims.

### 1.  Ashton Cannot Prove the Elements of a Lanham Act Claim

Courts have analyzed allegations that manufacturers have violated the Lanham Act for falsely or misleadingly suggesting UL certification for their products as claims for false advertising.[67]  In order to demonstrate false advertising under the Lanham Act, Ashton must demonstrate that (i) Fusite has made false or misleading statements of fact concerning its

---

[64]  *See* Amended Complaint (doc. 10), ¶¶ 14-17.

[65]  15 U.S.C. § 1125(a).

[66]  Ohio Rev. Code § 4165.01 *et seq.*

[67]  *See, e.g., Burndy Corp. v. Teledyne Indus., Inc.*, 584 F. Supp. 656 (D. Conn.) *aff'd* 748 F. 2d 767 (2d Cir. 1984); *cf. Sanborn Manuf. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F. 2d 484 (8th Cir. 1993).

products or the products of another; (ii) the statement actually deceives or tends to deceive a substantial portion of the intended audience; (iii) the statement is material in that it will likely influence the deceived customer's purchasing decisions; (iv) the misrepresentations were introduced into interstate commerce, and (v) there is some causal link between the challenged statements and harm to Ashton.[68]  As the Sixth Circuit explained:

> When a plaintiff seeks an award of monetary damages for false or misleading advertisement under the Lanham Act, he may show either that the defendant's advertisement is literally false or that it is true yet misleading or confusing. Where statements are literally false, a violation may be established without evidence that the statements actually misled consumers.  Actual deception is presumed.  Where statements are literally true, yet deceptive, or too ambiguous to support a finding of literal falsity, a violation can only be established by proof of actual deception (i.e. evidence that individual consumers perceived the advertisement in a way that misled them about the [defendant's] product).  A plaintiff relying on statements that are literally true yet misleading "cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react."  In addition, a Lanham Act claim must be based on a statement of fact, not of opinion.[69]

There is no evidence in the record, either because no such evidence exists or because of Ashton's discovery failures,[70] of any literal falsehood or misleading or deceptive statements by Fusite, nor is there any evidence of customer reaction whatsoever, let alone evidence of customers being deceived by Fusite's statements.   Fusite asked Ashton to "[i]dentify all purchasers of terminal blocks who require that terminal blocks have UL certification" and to describe all communications supporting the allegation that Fusite falsely and misleadingly

---

[68]    *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F. 3d 683, 689 (6th Cir. 2000).

[69]    *American Council of Certified Podiatric Physicians & Surgeons v. American Bd. Of Podiatric Surgery, Inc.*, 185 F. 3d 606, 614 (6th Cir. 1999) (citations omitted).

[70]    *See* Ex. E (Fusite Second Request for Production of Documents) at 5;  Ex. F (Fusite Second Set of Interrogatories) at 4-5 ("

certified and implied that its terminal blocks have UL certification.[71]  Ashton did not respond to these requests.  There is also no evidence in the record that could support a finding that UL certification is material to purchasers of blocks.  Lastly, Ashton has no competent evidence in the record, only its own allegations, that might connect alleged statements by Fusite to any harm to Ashton.[72]  Because Ashton cannot prove any of the elements of a Lanham Act false advertising claim, it is not entitled to any relief, whether injunctive or monetary, and summary judgment should be entered in favor of Fusite on this claim.

### 2. Ashton's Deceptive Trade Practices and Unfair Competition Claims Have No Merit

Nor is Ashton entitled to any relief under the Ohio Deceptive Trade Practices Act.  That Act mirrors the Lanham Act and the analysis of claims under each is the same.[73]  As a result, Ashton's failure to prove the elements of its Lanham Act false advertising claim dooms its Ohio Deceptive Trade Practices Act claim as well.  Ashton's common law unfair competition claim fails for the same reason.  "[W]here claims are made under Ohio common law and the deceptive trade practices statutes, courts are to apply essentially the same analysis as that applied in assessing unfair competition under the federal statutes."[74]

---

[71]    *See* Ex. F (Fusite Second Set of Interrogatories) at 4 ("Identify and describe all communications … supporting … the allegation that 'Fusite has falsely and misleadingly certified and implied that its terminal blocks have UL certification' and identify any other facts supporting those allegations.").

[72]    *See id.* at 4-5 ("Identify and describe all communications … supporting … the allegation that 'customers that specified UL certification for their parts would not have purchased from Fusite absent such certification, and would have purchased from Ashton.'").

[73]    *See Champions Golf Club, Inc. V. The Champions Golf Club, Inc.*, 78 F. 3d 1111, 1122-23 (6th Cir. 1996); *Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1431 (S.D. Ohio 1990).

[74]    *Cesare v. Work*, 36 Ohio App. 3d 26, 28, 520 N.E. 2d 586, 590 (1987).

## IV.  CONCLUSION

The time has come to bring this case to an end.  The Plaintiff has shown little or no interest in attempting to gather any evidence in support of its claims.  Discovery was extended at Ashton's request to give Ashton an additional opportunity to develop its case – yet Ashton continued to do nothing.  Discovery is now closed, and Ashton has failed to come forward with evidence sufficient to proceed to trial on its claims.  For the reasons set forth in this memorandum, Fusite respectfully requests that the Court dismiss all of Ashton's claims and enter summary judgment in favor of Fusite.

**OF COUNSEL:**
Jean Y. Teteris (0023022)
**PORTER WRIGHT MORRIS & ARTHUR, LLP**
41 South High Street
Columbus, Ohio 43215
(614) 227-2189 (614) 421-2100 (fax)

Arthur F. Golden
Ronan P. Harty
Arthur J. Burke
**DAVIS POLK & WARDWELL**
450 Lexington Ave.
New York, NY 10017
(212) 450-4000  (212) 450-3800 (fax)

    s/ Jerome J. Metz, Jr.
Jerome J. Metz, Jr. (0022974)
Mark E. Elsener (0023013)
*Trial Attorneys for Defendant Fusite
Corporation*
**PORTER, WRIGHT, MORRIS & ARTHUR LLP**
250 East 5th Street, Suite 2200
Cincinnati, Ohio 45202-5117
513/381-4700  (513) 421-0991 (fax)

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing DEFENDANT FUSITE CORPORATION'S MOTION FOR SUMMARY JUDGMENT and MEMORANDUM have been served upon the following persons by electronic means using the court's CM/ECF system if available, or by ordinary United States mail, postage prepaid or as otherwise indicated below, this __3<sup>d</sup>__ day of December, 2003.

W.B. Markovits, Esq.
MARKOVITS & GREIWE CO., L.P.A.
119 East Court St., Suite 500
Cincinnati, Ohio 45202

_____s/ Jerome J. Metz, Jr._____
*Attorney for Defendant Fusite Corporation*