UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ASHTON PLASTIC PRODUCTS, INC.<br>  Plaintiff,<br>vs.<br>FUSITE CORPORATION,<br>  Defendant. | : Case No.: C-1-02-529<br>:<br>: Judge Dlott<br>: Magistrate Judge Sherman<br>:<br>:<br>: |

**PLAINTIFF ASHTON PLASTICS PRODUCTS, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT FUSITE CORPORATION'S MOTION TO AMEND OR VACATE THE COURT'S ORDER GRANTING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE**

**I.   INTRODUCTION AND BACKGROUND**

Defendant Fusite Corporation's motion[1] should be denied. The Fusite Motion is inaccurate in its characterization of the course of proceedings in this case – Fusite did *not* in good faith attempted to settle this matter, Fusite did *not* in good faith respond to Plaintiff's discovery requests, and Fusite will *not* suffer prejudice from the dismissal granted by this Court.

Plaintiff first initiated settlement discussions in November, 2002, and sent a settlement proposal dated November 19th. *See* attached Declaration of W. B. Markovits (Exhibit 1). The only response was a rejection with no counter-offer. *Id.* After this Court granted Plaintiff's motion to amend its complaint on May 7, 2003, Plaintiff's counsel again initiated settlement discussions and was led to believe that Fusite was

---

[1]   Defendant Fusite Corporation's Motion to Amend or Vacate the Court's Order Granting Plaintiff's Motion for Voluntary Dismissal Without Prejudice ("Fusite Motion").

1

interested. *Id.* Plaintiff's counsel sent a settlement proposal on May 7, 2003, suggesting that the case be resolved with Fusite "and its affiliated companies . . . ." *Id.* This letter also stated that if no agreement was reached by May 16th, Plaintiff would respond to Fusite's second set of discovery requests by May 20th.[2] *Id.* Plaintiff's May 7th letter also asked that Fusite provide dates in late May for depositions of Fusite personnel if no settlement was reached. *Id.* The extended discovery date of May 16th came and went with the parties still in settlement mode. By joint motion dated May 22, 2003, the parties asked that discovery and other deadlines be pushed back even further while settlement efforts went forward.

During the next month and a half, discussions took place between counsel for Plaintiff and counsel for Defendant regarding the terms and conditions of the settlement negotiations, and more specifically, the confidentiality of such discussions. As a result of such discussions, an Agreed Entry relating to confidentiality was submitted to the Court for its consideration on August 18, 2003. Around that same time, the parties determined that they would attempt to negotiate a global settlement of all of the cases brought by Plaintiff which were still pending, considering all the claims sought to be resolved either directly or indirectly involved or impacted Defendant's controlling company, Emerson Electric Co.[3] *Id.* As a result, Robert McAughan, an attorney in the

---

[2]  Plaintiff had already prepared draft responses to the discovery requested, but held off on finalization during the settlement process. *Id.*

[3]  Defendant Fusite is a division of and controlled by Emerson Electric Co. During the proceedings of this action, Plaintiff also had claims pending in two separate suits which directly or indirectly involved or impacted Defendant's controlling entity, Emerson Electric Co. Specifically, Plaintiff initiated actions against Dimco-Gray Company, a primary supplier of Copeland Corporation, an entity controlled by Emerson Electric Co. One of the suits against Dimco-Gray Company alleged patent infringement, while

State of Texas, represented to Plaintiff's counsel that he had full authority to negotiate on behalf of Defendant, Emerson Electric Co., and Copeland Corporation, the entity controlled by Emerson Electric Co. who intervened in Plaintiff's patent infringement case against Dimco-Gray Company. *See* attached Affidavit of Richard L. Carr (Exhibit 2).

The attempt to reach a global settlement caused additional delay. As result of Copeland Corporation's intervention in one of the actions sought to be resolved in the global settlement (*i.e.*, the patent infringement suit), in August, 2003, Plaintiff's counsel in the patent litigation had to withdraw due to a conflict. *Id.* Consequently, settlement discussions were on hold until such time as Plaintiff was able to secure new counsel in the patent litigation case and such counsel was able to get up to speed on the patent case to effectively advise Plaintiff during settlement negotiations. Once new counsel was secured and was given adequate time to familiarize itself with the patent infringement case, Plaintiff promptly forwarded to Defendant's counsel a letter dated October 10, 2003, demonstrating Plaintiff's preparedness and willingness to negotiate in possibly resolving all of the disputes. In such letter, Plaintiff specifically broke down the actual damages incurred by Plaintiff and Plaintiff's reasoning and logic in calculating such damages. In response to Plaintiff's letter, Defendant's counsel, in his own letter dated October 20, 2003, construed Plaintiff's overture as an offer, rejected said offer, and failed to make any sort of offer of its own. At no time has Defendant made any offer to

---

the other suit raised claims relating to unfair trade practices. Copeland Corporation, the entity controlled by Emerson Electric Co. and a "sister" company of Defendant, later intervened in the patent infringement suit against its supplier.

Plaintiff to settle this case other than a mutual release and a dismissal with prejudice. *Id. See also* attached Declaration of W. B. Markovits (Exhibit 1). After receiving Defendant's rejection letter dated October 20, 2003, it was obvious to Plaintiff that Defendant was not in good faith attempting to settle this action. Plaintiff then took action. First, Plaintiff analyzed its financial situation and determined that it would be impossible for it to continue to prosecute this case. *See* attached Affidavit of Richard E. Kelch (Exhibit 3). Second, on or about November 3, 2003, Plaintiff contacted the U.S. Department of Justice, Antitrust Division, located in Cleveland, Ohio to report the alleged conduct and activities of Defendant set forth in Plaintiff's Amended Complaint (it is Plaintiff's understanding that the DOJ is currently investigating the actions and conduct of Defendant). *Id.* Third, once the Department of Justice began its investigation, and upon Defendant's refusal to agree to a stipulated dismissal without prejudice, Plaintiff filed its motion for dismissal without prejudice.

### III. ARGUMENT

#### A. THE FACTS AND CIRCUMSTANCES OF THIS CASE SUPPORT THE COURT'S ORDER GRANTING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE.

As correctly recited by Defendant in its Motion to Amend/Vacate, "[a] voluntary dismissal *should be granted in most cases* unless the defendant will suffer 'some plain prejudice other than the mere prospect of a second lawsuit.'" *Fawns v. Ratcliff*, 117 F.3d 1420 (6th Cir. 1997) (emphasis added). Courts, in considering whether a defendant would suffer the applicable type of "prejudice" if the dismissal requested is granted, have considered the following factors:

> (1) how much effort and expense the defendant has invested in preparation for trial; (2) whether the plaintiff has caused excessive delay or has not been diligent in prosecuting the action; (3) whether the plaintiff has offered an insufficient explanation for the need to take a dismissal; and (4) whether the defendant has filed a motion for summary judgment.

*Id.* As will be shown, none of the above-referenced factors suggest that the voluntary dismissal without prejudice ordered by the Court should be amended or vacated.

### 1. *The proceedings in the case had yet to reach a stage where significant effort and expense was invested by Defendant in preparation for trial.*

Contrary to Defendant's representations, significant effort and expense has not been invested by Defendant in *preparation of trial*. No depositions had taken place and no expert reports had been filed. Defendant's attempt to dispute this fact by stating that the absence of the foregoing "is more properly understood to reflect not cost savings to [Defendant], which had no burden of proof, but rather costs that [Plaintiff] saved itself" is absurd and illogical.

In support of its contention that it invested significant effort and expense in preparation for trial, Defendant proceeds to list certain actions taken by Defendant during the course of these proceedings. However, as an analysis on the list reveals, the majority of actions are actions which are either done by any party during the preliminary stages of any litigation or in furtherance of a possible negotiated resolution, and not in preparation of trial. Moreover, Plaintiff takes issue with certain of the representations. Fusite claims that part of the "significant" time it spent was "draft[ing] and transmit[ing] various settlement proposals . . . " Fusite Motion at 4. In fact, the only action Fusite took was to *reject* Plaintiff's carefully considered proposals – no

5

counteroffer, except the suggestion that Plaintiff dismiss its cases, was ever proposed. *See* attached declaration of W. B. Markovits (Exhibit 1) and attached affidavit of Richard L. Carr, Jr. (Exhibit 2). Plaintiff Fusite also claims that it produced "more than six thousand pages of documents to Ashton." Fusite Motion at 4. That may be true, but it is also true that Fusite objected to virtually every request, and failed to produce many of the key documents requested. Plaintiff's counsel expected to go to the Court for relief on this issue if the case proceeded forward. *See* attached declaration of W. B. Markovits.

By the time of Fusite's abrupt October 20th rejection of Plaintiff's global settlement proposal, the initial extensions of time for expert reports and fact discovery in this case had passed. Plaintiff still owed Fusite discovery responses – an issue that had not been raised at all by Fusite during the pendency of settlement negotiations. *See* attached Declaration of W. B. Markovits (Exhibit 1). Fusite owed Plaintiff dates for depositions of Fusite personnel – another issue that had not been raised at all during settlement negotiations. *Id.* Plaintiff assumed that if the global settlement process ultimately failed and the case was to go forward, further extensions would be necessary. *Id.* Fusite, on the other hand, apparently assumed that it could take advantage of the situation, encourage Plaintiff to proceed with a settlement proposal while the initially agreed upon discovery dates passed, reject the settlement and then quickly file a motion for summary judgment.[4]

---

[4] Even without discovery, Plaintiff believes the evidence it has produced to Fusite, and provided to the Department of Justice, would be sufficient to withstand summary judgment. *See, e.g.,* attached Affidavit of Richard E. Kelch and exhibits attached thereto. Moreover, the mere fact that Fusite filed a quick and simple motion for summary judgment does not preclude dismissal without prejudice. See, *B&J Manuf.*

Although Plaintiff acknowledges some expense and effort was, in fact, invested by Defendant in this case, as there would be in any case that has gone beyond the complaint and answer, Plaintiff submits that such effort and expense in preparation of trial does not rise to such a level of "significance" as to warrant this Court vacating or amending its Order. "What suffices to require a court to exercise its discretion and deny [a motion for voluntary dismissal] ... has been variously described as harm '*manifestly prejudicial* to the defendant' ... 'substantial legal prejudice' to defendant ... and the loss of any 'substantial right'" *B&J Manuf. Co. v. D.A. Frost Ind., Inc.*, 106 F.R.D. 351 (N.D. Ohio 1985). The level of prejudice required to warrant this Court to vacate its own previous Order is simply not present in this case.

### 2. *Plaintiff prosecuted the action with diligence and any delay in the prosecution of the action was as a result of the parties' mutual advancement towards a negotiated resolution.*

Contrary to Defendant's mischaracterizations set forth in its Motion, at all times relevant, Plaintiff prosecuted this action with diligence. Plaintiff acknowledges that a delay in the formal prosecution of this action did occur. However, Plaintiff submits to this Court that such delay occurred as a result of what Plaintiff thought was the parties' *mutual* agreement and understanding to work towards a negotiated resolution, as previously set forth. There was an initial delay caused by negotiations regarding a confidentiality agreement, and a second delay caused by an attorney conflict resulting

---

*Co. v. D.A. Frost Ind., Inc.*, 106 F.R.D. 351 (N.D. Ohio 1985) (noting that even significant expense in preparing and filing pleadings does not prevent the granting of a voluntary dismissal).

from the global nature of the settlement discussions.[5] Neither of these delays were due to a "lack of diligence" on the part of Plaintiff.

Defendant also refers to Plaintiff's failure to produce discovery responses to Defendant's discovery requests in support its contention that Plaintiff failed to diligently prosecute its claims. Fusite Motion at 6-7. However, as discussed above, Plaintiff assumed it was understood that discovery would be put on hold while settlement discussions took place. This understanding is not only supported by Defendant's actions in joining in on motions to push discovery deadlines, but also by the fact that at no time had Defendant ever complained to Plaintiff or this Court that Plaintiff was not complying with discovery. Defendant's complaints about Plaintiff's failure to respond to Defendant's discovery requests did not come to surface until *after* Plaintiff filed its Motion for Voluntary Dismissal. Defendant's past acquiescence is compelling evidence that Defendant's current gripes are disingenuous. Although settlement discussions turned out to be unsuccessful, once this was determined, Plaintiff shortly thereafter filed its Motion for Voluntary Dismissal thus disposing of the need to produce discovery responses.

Finally, Defendant's attempt to characterize Plaintiff's efforts in pursuing settlement as lackluster and sporadic and its own efforts as diligent is ironic considering

---

[5] Any notion by Defendant in its Motion that counsel for Plaintiff acted inappropriately in failing to notify Defendant's counsel that it was attempting to settle a number of other cases filed by Plaintiff as well as this action is unfounded considering it was Mr. McAughan, Defendant's own counsel, who represented on many occasions to Plaintiff that he was acting on behalf of not only Copeland Corporation and Emerson Electric Co., but also Defendant. Any breakdown which may have occurred through the communication channels of the legal division and team of Defendant is not the fault of Plaintiff.

the direct opposite is true. At all times relevant, Plaintiff has diligently pursued the prospect of settlement in this case. This is supported by the fact that multiple offers/overtures of settlement were forwarded by Plaintiff to Defendant. Despite the foregoing, Defendant has failed to make any counter-offers of its own. Under these circumstances, how Defendant could characterize its own efforts in pursuing settlement as diligent is beyond reasonable comprehension.

### 3. Plaintiff's financial condition obstructs its ability to continue to prosecute this action at this time.

Defendant contends in its Motion to Amend/Vacate that Plaintiff's financial condition is an insufficient explanation for seeking dismissal.[6] Defendant also argues that Plaintiff should have provided a declaration or affidavit attesting to its financial condition. There is no such requirement; notwithstanding, Plaintiff submits the affidavit of Richard Kelch, a representative of Plaintiff, to evidence the financial strife of Plaintiff at this time which led to Plaintiff's decision to request for a dismissal of this action without prejudice. *See* attached Declaration of Richard Kelch.

### 4. No summary judgment motions had been filed or pending at the time Plaintiff filed its Motion for Voluntary Dismissal Without Prejudice.

It is true that the Court may consider the pendency of a summary judgment motion as a factor in deciding whether to grant a voluntary dismissal. *Fawns v. Ratcliff*, 117 F.3d 1420 (6th Cir. 1997). Plaintiff filed its Motion to Dismiss Voluntary without

---

[6] Despite being a factor a court could consider, it must be noted that courts have generally found that a plaintiff's reasons for desiring to dismiss a case are immaterial and of no consequence in determining whether to grant a voluntary dismissal. *B&J Manuf. Co. v. D.A. Frost Ind., Inc.*, 106 F.R.D. 351 (N.D. Ohio 1985).

Prejudice on December 2, 2003. Defendant shortly thereafter filed a summary judgment motion. Plaintiff submits to the Court that the mere filing of a summary judgment motion after the filing of a motion for voluntary dismissal should not be strongly considered in whether to grant a voluntary dismissal. If such was the case, parties opposing a request for voluntary dismissal could simply file a summary judgment motion to create support for their opposition.

### 5. *The "fear of exposure" is not a basis for dismissal with prejudice..*

Defendant contends that dismissal of this action with prejudice deprives Defendant the opportunity to remove the "fear of exposure of liability for ongoing business practices". Fusite Motion at 9. If there is indeed "no evidence to support" Plaintiff's claims (Fusite Motion at 5), and the summary judgment motion is so strong, why should there be any fear of exposure of liability? This inconsistency betrays the truth. Fusite is in fear - in fear that the Department of Justice investigation will result in criminal or civil liability, with resultant collateral estoppel effect that could be used by Plaintiff. However, as conceded by Defendant in its own Motion, the fear or threat of a second lawsuit is not sufficient to establish the prejudice necessary to deny a request for voluntary dismissal.

**B.    IN THE ALTERNATIVE, IN THE EVENT THE COURT FINDS DEFENDANT'S MOTION WELL TAKEN AND AMENDS OR VACATES ITS ORDER DISMISSING THIS CASE WITHOUT PREJUDICE, THIS CASE SHOULD BE STAYED PENDING THE COMPLETION OF AN INVESTIGATION BY THE U.S. DEPT. OF JUSTICE, OR NEW DEADLINES SHOULD BE SET.**

The Plaintiff's claims in this case are currently the subject of an investigation by

the Department of Justice Antitrust Division. If the Antitrust Division decides to take action on Plaintiff's claims, this could obviate the need for determination of liability in this case. If the Court therefore determines to reconsider its dismissal without prejudice, Plaintiff would suggest that this case be stayed during the pendency of the Department of Justice investigation. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248 (1936). "The decision to stay a civil action pending the completion or declination of a criminal investigation lies within the sound discretion of the trial court." *Horn v. District of Columbia*, 210 F.R.D. 13 (U.S. Dist. D.C. 2002) citing *Landis*, 299 U.S. 248. In this case a stay would be warranted because the issues in the civil action are identical to the issues in the Department of Justice investigation and Plaintiff would sustain economic hardship if it was required to go forward with the case at this time.

Even if this Court finds Defendant's Motion to Amend/Vacate well taken and also decides not to grant a stay, the relief requested by Defendant that the Court's Order be amended to dismiss this case *with prejudice* should be denied at this time. Under Sixth Circuit case law, a court should not dismiss claims with prejudice in response to plaintiff's request for dismissal without prejudice "…without giving plaintiff notice of [the court's] intention to dismiss with prejudice, an opportunity to be heard, and an opportunity to withdraw the request for voluntary dismissal and proceed with the litigation…" *O'Hara v. Board of Ed. Of the Brooklyn City School Dist.*, 72 Fed. Appx.

11

311 (6th Cir. 2003).[7]

## IV. **CONCLUSION**

For the reasons set forth herein, Defendant's Motion to Amend/Vacate should be denied in all respects. In the alternative, in the event the Court finds Defendant's contentions set forth in its Motion to Amend/Vacate well taken, the Court should either: 1) stay the proceedings pending the completion or declination of the federal investigation; or 2) vacate and extend current scheduling deadlines in allowing the Plaintiff the opportunity to proceed.

                                              Respectfully submitted,

                                              */s/ Paul Markovits*
                                              W. B. Markovits (0018514)
                                              Markovits & Greiwe
                                              119 East Court Street
                                              Cincinnati, Ohio 45202
                                              513/977-4774; 513/621-7086 (fax)
                                              Email: bmarkovits@mgattorneys.com
                                              Attorney for Plaintiff

---

[7] Although it is doubtful Plaintiff could currently elect to proceed due to its financial circumstances, if the case were to proceed Plaintiff would also seek to vacate and extend the current scheduling dates.

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Plaintiff Ashton Plastic Product Inc.'s Memorandum in Opposition to Defendant Fusite Corporation's Motion to Amend or Vacate the Court's Order Granting Plaintiff's Motion for Voluntary Dismissal Without Prejudice* have been served upon the following persons by electronic means using the court's CM/ECF system if available, by facsimile, or by ordinary United States mail, postage prepaid, this 5th day of January, 2004.

Jerome J. Metz, Jr. (0022974)
Mark E. Elsener (0023013)
Porter, Wright, Morris & Arthur LLP
250 East 5th Street, Suite 2200
Cincinnati, Ohio 45202-5117
(513) 381-4700  (513) 421-0991 (fax)

Jean Y. Teteris (0023022)
Porter, Wright, Morris & Arthur LLP
41 South High Street
Columbus, Ohio  43215
(614) 227-2189  (614) 421-2100 (fax)

Arthur F. Golden
Ronan P. Harty
Arthur J. Burke
Davis, Polk & Wardwell
450 Lexington Ave.
New York, N.Y.  10017
(212) 450-4000  (212) 450-3800 (fax)

W. B. Markovits