UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ASHTON PLASTIC PRODUCTS, INC. | Case No.: C-1-02-529 |
| Plaintiff, | Judge Dlott |
| | Magistrate Judge Sherman |
| vs. | |
| FUSITE CORPORATION, | |
| Defendant. | |

**DECLARATION OF W.B. MARKOVITS**

On the 5th day of January, 2003, under penalty of perjury of the laws of the United States, W. B. Markovits states as follows:

1. I am trial counsel for Plaintiff Ashton Plastics Products, Inc. in the above-captioned action. I submit this Declaration in connection with Plaintiff's Memorandum in Opposition to Defendant Fusite Corporation's Motion to Amend or Vacate the Court's Order Granting Plaintiff's Motion for Voluntary Dismissal Without Prejudice. I have personal knowledge of the facts described herein.

2. In November 2002 I spoke with counsel for defendant Fusite and suggested the parties consider settlement of this matter. I sent a letter dated November 19, 2002, setting forth a proposed settlement. A few weeks later, I was informed by Fusite counsel that the settlement demand was rejected. No counteroffer was forthcoming.

3. In March 2003 we received documentation from Fusite, purportedly responsive to earlier discovery requests. Plaintiff's document requests were met with numerous objections, but these documents were being produced "subject to the objections." When these documents were reviewed some time later by Mr. Kelch, Plaintiff's president, it was discovered that a number of critical documents had not been produced, and much of the production was "fluff." I intended to raise this with the Court after determination of a pending motion to amend the complaint.

4. After the Court granted Plaintiff's motion to amend in May 2003, I again suggested to Fusite counsel that it might be in both parties' interests to settle this matter. By letter dated May 7, 2003, I suggested a settlement with Fusite and "its affiliated companies," stating that if the parties did not reach a settlement by May 16, 2003, Ashton would respond to two outstanding discovery requests. I had already drafted responses to these discovery requests at the time, but held off finalizing discovery responses while settlement talks were pending. I also informed Fusite counsel that if a settlement was not reached by May 16, 2003 I would need deposition dates for Fusite personnel identified in defendant's interrogatory answers.

5. The May 16th settlement cut-off passed with the parties still apparently interested in pursuing settlement. On May 22, 2003, the parties filed a joint motion to extend discovery and motion dates to accommodate settlement discussions. This motion was granted by the Court.

6. There were two factors that caused some delay in the settlement process. Initially, the parties had a little difficulty agreeing upon a confidentiality order that would govern the settlement discussions. An Agreed Entry was filed on August 18th and entered on August 25th. The second factor that caused some delay was a conflict that arose with Plaintiff's patent counsel after the parties determined that a global settlement (including patent claims) should be discussed.

7. After detailed evaluations including all of its counsel, Plaintiff provided a settlement demand by letter dated October 10, 2003. Mr. McAughan, a Texas lawyer who indicated he was authorized to represent Fusite and its parent and affiliated companies, rejected that demand by letter dated October 20, 2003. No counteroffer was made.

8. I have been in receipt of no settlement offer from Fusite, either in writing or orally, other than the "offer" that Plaintiff dismiss its suit.

9. During the settlement negotiations, I assumed that discovery efforts were on hold, and that some scheduling dates might have to be reset given that the settlement negotiations had taken longer than originally anticipated. At no time during the settlement negotiations did Fusite's counsel raise the issue of the pending scheduling dates – they did not inquire regarding outstanding discovery, nor did they provide the requested dates for depositions of Fusite personnel. After the October 20th termination of settlement discussions by Fusite, I advised Mr. Kelch of Ashton what steps would be necessary to proceed with the case. After some

consideration, Mr. Kelch informed me that it did not appear that Ashton would be financially able to proceed with the litigation against Fusite.

10. On November 26, 2003, I spoke with counsel for Fusite and asked if they would stipulate to a dismissal without prejudice. On December 1, 2003, counsel for Fusite indicated that Fusite was not willing to stipulate to dismissal without prejudice, and asked if Ashton would agree to dismissal with prejudice or to a mutual release of claims. Ashton would not agree, and instructed me to file a motion for voluntary dismissal without prejudice, which I did on December 2, 2003.

By: *[signature]*
W. B. Markovits