IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ASHTON PLASTICS PRODUCTS, INC. | * * * | CIVIL ACTION NO. C-1-02-529 |
| Plaintiff, | * * | Judge Dlott (Magistrate Judge Sherman) |
| vs. | * * | |
| FUSITE CORPORATION | * * | |
| Defendant | * * | |

---

### AFFIDAVIT OF RICHARD L. CARR, JR.

STATE OF OHIO            :
                                       : SS:
COUNTY OF MONTGOMERY : 

I, Richard L. Carr, Jr., being first duly cautioned and sworn, deposes and says:

   1. I am, and at all times relevant, have been corporate counsel for Ashton Plastic Products, Inc.

   2. On March 25, 2003, Ashton brought suit against Dimco-Gray Company, a competitor of Ashton Plastic Products. Dimco-Gray was selling Copeland Corporation, a Division of Emerson Electric, a competitive terminal block which was not UL listed. Copeland had specified the part as requiring UL listing and Copeland represents its products to be UL listed. Ashton alleged violations of the Lanham Act and Ohio's Deceptive Trade Practices Act. A copy of that Complaint is attached hereto as Exhibit A.

   3. Ashton Plastic Products, Inc. is the holder of a patent relating to anti-cross thread technology involved in terminal blocks which have been sold to Copeland.

4. On May 14, 2003, Ashton Plastic Products, Inc., through the Dayton law firm of Killworth, Gottman, Hagan & Schaeff, brought suit against the Dimco-Gray Company for patent infringement.

5. On or about August 8, 2003, Copeland/Emerson, a sister corporation of Fusite/Emerson, intervened in the Ashton-Dimco patent case. Copeland/Emerson was represented by Robert McAughan out of Texas.

6. Shortly after Copeland intervened in the Ashton-Dimco patent case, on August 14, 2003, the law firm of Killworth, Gottman, Hagan & Schaeff merged with Dinsmore Shohl. Dinsmore Shohl represented Copeland on Workers' Compensation matters and, on that basis, Copeland objected to Dinsmore Shohl continuing to represent Ashton Plastic Products. As a result of Copeland's objections to Dinsmore's representation, Ashton, in the middle of its patent case, had to obtain new counsel to advise it regarding its patent claims and possible settlement. Once new patent counsel, Wood Herron, was located, that new patent counsel needed to become familiar with the facts and economics of the case in order to advise Ashton Plastic Products as to prosecution of the case and potential settlement.

7. Prior to Copeland/Emerson's involvement in the Ashton situation, I had attempted to restart settlement negotiations with Fusite/Emerson. On the basis of a telephone conversation with Fusite's corporate counsel, it appeared to me that Fusite's corporate counsel had little respect for the confidentiality of settlement negotiations. As a result, in June of 2003, I insisted that Fusite/Emerson enter into an Agreed Protective Order prior to the commencement of any settlement negotiations. In July, a draft Agreed Protective Order was forwarded to Fusite's counsel, Ronan Harty. To the best of my knowledge, Ronan Harty did not agree to the terms of the Agreed Protective Order until early August 2003, around the same time as Robert McAughan's appearance in the patent case. As of the beginning of August, although the Agreed Protective Order was in place, and Copeland had intervened in the patent case, Ashton was without a patent counsel.

8. Once patent counsel was up to speed, Robert McAughan from Texas indicated that he was authorized to represent Copeland and Fusite, both sister companies of Emerson, in settlement negotiations.

9. In October 2003, following the disruption caused by Copeland's disqualification of Dinsmore representing Ashton, as a part of settlement negotiations, Ashton provided a detailed position statement to Mr. McAughan which could have formed the basis of settlement negotiations. Mr. McAughan interpreted Ashton's position statement as an offer and rejected that offer. At no point, did Mr. McAughan ever present any sort of counteroffer or proposal.

10. If, as Fusite's counsel represents, Fusite/Emerson prepared detailed settlement documents, Mr. McAughan at no point made any settlement proposal or shared any settlement documents of any sort.

11. Following Mr. McAughan's refusal to make any sort of counteroffer, Ashton made a determination that it was financially unable to pursue its Fusite litigation and dismissed its action. On the basis of my involvement in this series of settlement efforts, it is my belief that McAughan and/or Fusite did not make any settlement offer because they were "sandbagging", anticipating that they would be making the Summary Judgment Motion which they filed following this Court's dismissal of Ashton's case without prejudice. Although Ashton and Dimco-Gray negotiated in good faith for possible resolution of their differences, to my knowledge neither Copeland nor Fusite at any point made any sort of settlement offer to Ashton.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Richard L. Carr, Jr.

Sworn to and subscribed in my presence by Richard L. Carr, Jr. this 2nd day of January, 2004.

_____
SAMANTHA J. STEINKAMP, Notary Public
In and for the State of Ohio
My Commission Expires Feb. 9, 2005



FILED
MAR 25 2003
KENNETH J. MURPHY, Clerk
DAYTON, OHIO

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| ASHTON PLASTICS PRODUCTS, INC. : <br> 1150 South Patton St. <br> P.O. Box 516 : <br> Xenia, OH 45385 <br> : <br> Plaintiff, <br> : <br> vs. <br> : <br> DIMCO-GRAY COMPANY <br> c/o David Scott, Statutory Agent : <br> 8200 S. Suburban Rd. <br> Dayton, OH 45458 : <br> <br> Defendant. : | CASE NO.: **C-3-03-094** <br><br> JUDGE **WALTER HERBERT RICE** <br><br> **COMPLAINT** |

Plaintiff, Ashton Plastics Products, Inc ("Plaintiff"), by and through its counsel, and for its Complaint against Defendant, Dimco-Gray Company ("Defendant"), pleads as follows:

1. Plaintiff is an Ohio corporation with is principal place of business is Xenia, Ohio engaged in the business of providing custom plastic molding and other relating manufacturing, including, but not limited to, the manufacturing of terminal blocks.

2. Defendant is an Ohio corporation engaged in the business of providing custom molding and other related manufacturing, including, but not limited to, the manufacturing of terminal blocks.

3. This action seeks damages and injunctive relief for violations of federal and state unfair competition/unfair and deceptive trade practices laws. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. §1331, as well as this Court's supplemental jurisdiction over state law claims, 28 U.S.C. § 1367.

4. Venue is proper under this forum pursuant to 28 U.S.C. §1391(b).

5. At all times relevant hereto, Defendant has engaged in a continuous flow of business manufacturing terminal blocks and related materials in this jurisdiction, and other states in the United States. Defendant's business activities that are the subject of this complaint are within the flow of interstate trade and commerce and have had, and continue to have, a substantial effect upon such trade and commerce.

6. Underwriter Laboratories, Inc. ("UL"), is an independent, not-for-profit product safety testing and certification organization based in Northbrook, Illinois.

7. Major customers of Plaintiff and other custom molding manufacturers generally provide material specifications that require UL certification.

8. Plaintiff has had UL certification for its terminal blocks for many years.

9. After the initial certification process, Plaintiff pays fees to UL and is periodically audited by UL.

10. Upon information and belief, the terminal block specifications provided by companies to Defendant are the same as provided to Plaintiff. A particular terminal block, with a particular part number, will have a specific material specification which calls out that the material must meet UL certification requirements.

11. Upon information and belief, and based upon a search of the UL database, Defendant does not have UL certification for its terminal blocks.

12. Upon information and belief, Defendant has certified to its terminal block purchasers that its terminal block materials meets their specifications (it is a general practice in the industry to certify compliance with specifications).

13. Defendant's certification is false and misleading - its terminal blocks materials do not meet specifications because Defendant does not have UL certification.

14. Defendant has falsely and misleadingly certified and implied that its terminal block materials have UL Material Certification to its terminal block purchasers.

15. As a result of Defendant falsely and misleadingly certifying and implying that its terminal blocks have UL Material Certification, Defendant is in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 et seq., and common law unfair competition.

16. Upon information and belief, customers that specified UL Material Certification for their parts would not have purchased from Defendant absent that certification, and would have purchased from Plaintiff.

17. As a result of Defendant's deceptive practices, Plaintiff has been injured in its business and property in an amount to be determined.

WHEREFORE, Plaintiff prays as follows:

A. That Plaintiff be awarded judgment against Defendant in an amount yet to be determined.

B. That Defendant be permanently enjoined from falsely and misleadingly certifying and implying that its terminal block materials have UL Material Certification to its terminal block purchasers.

C. That Plaintiff be awarded punitive damages against Defendant.

    D.    That Defendant be ordered to pay Plaintiff's reasonable attorneys' fees and expenses as incurred as a result of Defendant's conduct.

    E.    That the judgment bears interest at the statutory rate.

    F.    That Defendant be ordered to pay the costs of this action.

    G.    That Plaintiff be granted such other and further legal and/or equitable relief as this Court deems just and appropriate.

Respectfully Submitted:

_____
Richard L. Carr, Jr. (0003180)
Gregory M. Kaskey (0074231)
DUNLEVEY, MAHAN & FURRY
110 North Main Street, Suite 1000
Dayton, OH 45402-1738
937/223-6003
Attorneys for Plaintiff