UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ASHTON PLASTIC PRODUCTS, INC., Plaintiff, | Civil Action No. C-1-02-529 |
| v. | (JUDGE DLOTT) |
| FUSITE CORPORATION, Defendant. | (Magistrate Judge Sherman) |

**DEFENDANT FUSITE CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO AMEND OR VACATE THE COURT'S ORDER GRANTING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE**

Pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, Defendant Fusite Corporation ("Fusite") respectfully submits this Reply Memorandum in Support of its Motion to Amend or Vacate the Court's Order Granting Plaintiff's Motion for Voluntary Dismissal Without Prejudice.

**I. ASHTON IS NOT ENTITLED TO VOLUNTARY DISMISSAL WITHOUT PREJUDICE**

The law governing voluntary dismissal reflects the equitable principle that at some point in the course of a lawsuit, because of the expense, both in time and money, imposed upon the defendant and the court as a result of the suit, the plaintiff may no longer unilaterally discontinue the suit without consequence. As both parties have noted, the governing standard takes into account, among other things, the plaintiff's diligence in maintaining the lawsuit and the filing of a dispositive motion on the merits by the defendant.[1] The consideration of these factors permits the deciding court to assess whether the plaintiff is using voluntary dismissal for the manifestly

---
[1] *See Grover v. Eli Lilly & Co.*, 33 F. 3d 716, 718 (6th Cir. 1994).

inequitable purpose of cutting short a lawsuit when the plaintiff senses that things are not going its way and an adverse judgment is imminent.

This equitable principle underlying the standard applies with particular force in this case. Contrary to Plaintiff Ashton Plastic Products' ("Ashton") assertions in its opposition papers, there is no evidence to support Ashton's claims. Moreover, an objective view of Ashton's conduct throughout the lawsuit suggests that Ashton did not have a genuine interest in conducting meaningful discovery to gather such evidence, but rather was only interested in extracting an undeserved settlement from Fusite. When no settlement was reached, realizing that it had not complied with any of the various extended discovery deadlines in the case, Ashton sought to use voluntary dismissal to reset those lapsed deadlines and to avoid an adverse judgment despite the expense incurred by defendant Fusite. In such circumstances granting Ashton a voluntary dismissal of its claims without prejudice is unfair to Fusite and inappropriate. Ashton's claims should be dismissed with prejudice or Ashton's motion should be denied.

     A.     ASHTON'S CLAIMS LACK MERIT AND AN OBJECTIVE VIEW OF ASHTON'S CONDUCT REVEALS THAT IT NEVER HAD ANY HOPE OR INTENTION OF PROVING ITS CLAIMS

In its opposition papers, Ashton paints a picture of this litigation that is entirely unfamiliar to Fusite. Ashton suggests that it has meritorious claims, but that Fusite engaged in bad faith behavior in the hope of using procedural trickery to eliminate those claims. Ashton's characterization of the events of this case is simply not accurate, and even if it were true would not excuse its lack of diligence.

Ashton's conduct in this suit, viewed objectively, and often even as described in its own memoranda and affidavits, betrays the reality that Ashton never had any hope or intention of resolving its claims on their merits. Ashton, by its own account a failing company, filed a number of lawsuits against its competitors, including Fusite, at around the same time, with the

2

hope of extracting undeserved settlements, including supply contracts that might reverse Ashton's fortunes.[2] Contrary to Ashton's assertions, Fusite both defended this suit on the merits in good faith and engaged in settlement discussions in good faith, despite being baffled by Ashton's inactivity and lack of diligence. Ashton has no one to blame for its failures but itself, and Ashton alone, not Fusite, should bear the consequences of those failures.

### 1. There Is Not A Sufficient Legal Basis For Ashton's Claims

As an initial matter and despite its assertions to the contrary, there is not a sufficient legal basis for Ashton's claims. Ashton suggests that it had in its possession, and produced to Fusite in the course of this litigation, a document that demonstrates, at least in a manner sufficient to withstand a motion for summary judgment, that Fusite was engaged in illegal tying.[3] The document in question, however, suggests at most that Fusite offered packaged discounts to a customer on its products, a fact that Fusite freely admits.[4] As noted in Fusite's Motion for Summary Judgment, the mere existence of a package discount is insufficient as a matter of law to demonstrate an illegal tying arrangement and would not withstand a summary judgment motion.[5] Accordingly, Ashton did not have a sufficient basis to allege an illegal tying arrangement when it brought its claims.[6]

The same is true with respect to Ashton's unfair competition claims. As with its tying claim, Ashton claims to have had documentary evidence supporting its Lanham Act and state

---

[2]   *See* Affidavit of Richard L. Carr, Jr. ("Carr Aff't") at 1-2; Plaintiff Ashton Plastic Products Inc.'s Memorandum in Opposition to Defendant Fusite Corporation's Motion to Amend or Vacate the Court's Order Granting Plaintiff's Motion for Voluntary Dismissal Without Prejudice ("Opp. Memo.") at 2 n. 3.

[3]   *See* Opp. Memo at 4 n. 6; Affidavit of Richard E. Kelch ("Kelch Aff't") at 2 and Ex. A.

[4]   *See* Kelch Aff't Ex. A, Gilligan Aff't at 1-2.

[5]   *See* Fusite's Motion for Summary Judgment ("MSJ") at 9-11.

[6]   As discussed in Fusite's Motion for Summary Judgment, because the alleged conduct underlying Ashton's attempted monopolization claim depended on proof of illegal tying, the fact that Ashton had no basis for alleging an illegal tying arrangement means that Ashton also had no basis for its attempted monopolization claim.

3

statutory and common law unfair competition claims when those claims were filed.[7] As an initial matter, Ashton's claim seems to have changed from the allegation in its complaint that Fusite falsely represented that its terminal blocks were UL "certified" to an allegation that its terminal blocks were UL "recognized."[8] Regardless of the ambiguity, it is entirely unclear how the website printouts proffered by Ashton as evidence prove, or even support, Ashton's claim. Such a claim requires evidence of false or misleading statements by Fusite to purchasers, deception, materiality and a causal link between the statements and harm to Ashton.[9] Ashton offered no such evidence. The proffered evidence is insufficient as a matter of law to prove, or to withstand a motion for summary judgment on, Ashton's claims.

### 2. Ashton Never Sought To Prove Its Claims

Ashton not only lacked sufficient evidence to support its claims when brought, Ashton failed to use the opportunities provided in discovery to develop any evidence that might have supported its claims. Ashton's discovery failures were set forth in detail in Fusite's initial memorandum and will not be repeated.[10] In its opposition papers, Ashton seeks to excuse those failures by noting that it "assumed it was understood that discovery would be put on hold while settlement discussions took place."[11]

This is a remarkable claim for Ashton to make. As an initial matter, had the parties intended discovery to be "put on hold" during the settlement negotiations, they would have

---

[7] *See* Kelch Aff't at 2-3 and Ex. B.

[8] *Compare* First Am. Cmplt. ¶¶ 13-17 *with* Kelch Aff't at 3 and Ex. B.

[9] *See* MSJ at 17-18.

[10] *See* Defendant Fusite Corporation's Motion to Amend or Vacate the Court's Order Granting Plaintiff's Motion for Voluntary Dismissal Without Prejudice ("Memo.") at 5-10.

[11] Opp. Memo. at 8.

agreed to stay discovery instead of extending the discovery deadlines.[12] More significantly, had Ashton truly sought to prove the merits of its claims by availing itself of the discovery process, it would have and should have had the diligence to seek to further extend the already-extended discovery deadlines *before they lapsed*. However, as set forth in Fusite's initial memorandum, all significant discovery deadlines in the case, including those for expert witnesses, had lapsed long before Ashton sought to dismiss the case.[13] As a result, Ashton never sought to develop proof on the most fundamental elements of its claims, including expert proof on the definition of the relevant antitrust geographic and product markets.[14]

Simply put, Ashton had no basis for its claims, Ashton neither asked for nor provided meaningful discovery to support its claims, and Ashton disregarded all relevant deadlines. Ashton's portrayal of itself as a good-faith plaintiff seeking a negotiated resolution of its claims to the mutual benefit of all involved and Fusite as a bad-faith defendant engaging in procedural chicanery to deprive Ashton is self-serving and should be rejected. The parties' actions speak for themselves, and Ashton's failures speak the loudest.

---

[12] Ashton seems to argue that Fusite somehow endorsed its discovery failures by failing to insist that Ashton respond to Fusite's outstanding discovery requests. As an initial matter, Fusite is under no obligation to cue Ashton to its responsibilities in this litigation. The primary reason that Fusite did not insist on a response to its outstanding discovery requests was because Ashton, the party with the burden in this case, had not demonstrated at any stage of the proceedings that it had evidence supporting its claims. As a result, there was little urgency to the defensive discovery sought by Fusite.

[13] *See* Memo. at 7-10.

[14] Ashton also seeks to excuse its discovery failures by noting that there were a number of actions that Ashton would have taken but for the dismissal, including filing discovery requests and responses, seeking relief from the Court for alleged discovery failures by Fusite, and seeking to depose Fusite witnesses. *See* Opp. Memo. at 6 ("Fusite objected to virtually every request, and failed to produce many of the key documents requested"; "Fusite owed Plaintiff dates for depositions of Fusite personnel"). Although these allegations are irrelevant to the analysis of whether Fusite's motion should be granted, Fusite must strenuously oppose any suggestion that it was abusing the discovery process. Fusite stands by its responses and objections to Ashton's discovery requests. Furthermore, Ashton's assertion that Fusite "owed" Ashton dates for depositions is patently false. In one of its settlement proposals, Ashton noted that if settlement was not reached by a certain date, Ashton would be requesting depositions of unnamed Fusite personnel. Ashton never identified the personnel it sought to depose nor raised the issue again. Fusite "owed" Ashton nothing. This evidence of what Ashton "intended to do" or "would have done" is in any case self-defeating. The only factor preventing Ashton from doing any of the above was its own lack of diligence.

### B. ASHTON FAILED DILIGENTLY TO PURSUE SETTLEMENT

Despite the fact that settlement represented Ashton's only hope of recovery on these claims, Ashton failed diligently to pursue settlement discussions just as it failed to pursue discovery. Fusite does not dispute that a short period of time is required to sort out the logistical aspects of preparing for settlement discussions. There were, however, significant unexplained delays in the process that can only be attributed to Ashton's lack of diligence. To choose but two examples, Ashton failed to file its Motion for Agreed Entry regarding settlement discussions until a full three weeks after counsel for Fusite had approved the terms of the Motion.[15] Furthermore, after the Court granted the Motion on August 25, 2003, Ashton did not make a settlement proposal until October 10, 2003, *six weeks* later.[16] Many of the various discovery deadlines that Ashton failed to comply with lapsed during this six-week period. Fusite cannot be asked to share the blame for these failure and oversights.

### C. FUSITE HAS SPENT SIGNIFICANT TIME AND MONEY DEFENDING THIS ACTION AND HAD FILED A MOTION FOR SUMMARY JUDGMENT WHEN THE CASE WAS DISMISSED

Although Ashton is correct in noting that Fusite was not put to the expense of taking depositions of witnesses, Ashton's assertion that Fusite's expenses in this case should not be considered by the Court because they are not "pre-trial" expenses finds no support in the case law. While the case law does reflect the reasonable observation that as parties approach trial their expenses, and the defendant's consequent prejudice, are likely to increase, there is no bright line drawn between expenses incurred at various stages of the litigation, as Ashton suggests. Fusite's expenses were set forth in its initial memorandum and were significant.[17] Moreover,

---

[15] *See* Harty Decl. ¶¶ 7-9.

[16] *Id.*

[17] *See* Memo. at 3-4.

many of the expenses, particularly those associated with the preparation of Fusite's Motion for Summary Judgment, could have been avoided if Ashton had been more diligent and sought to dismiss the case sooner, knowing that it had no evidence to support its claims.

This is particularly true with respect to Fusite's costs in preparing its Motion for Summary Judgment, which was pending when Ashton's Motion for Voluntary Dismissal was granted. Ashton's hyper-technical argument that no summary judgment motion was pending when its motion to dismiss was *filed* strains credulity and should not be rewarded by this Court. As set forth in Fusite's initial memorandum, Ashton filed its Motion for Voluntary Dismissal a day before the deadline for dispositive motions in this case with full knowledge that Fusite had prepared and would file a motion for summary judgment the next day.[18] Ashton's lack of diligence in discovery was such that it did not need to see the substance of Fusite's Motion for Summary Judgment to know that its discovery failures would prevent it from having any meaningful response. In such circumstances, Ashton's formalistic argument that Fusite's Motion for Summary Judgment was not pending when Ashton's motion was filed should be ignored. Ashton's motion was filed precisely because it knew its claims could not withstand a motion for summary judgment, and that the motion was forthcoming in one day. There can be no question that a motion for voluntary dismissal filed under such circumstances is filed for the manifestly prejudicial purpose of cutting short a lawsuit in order to avoid an adverse judgment on the merits and to reset lapsed discovery deadlines.

Under these circumstances, where the case has been pending for over sixteen months, where Ashton has consistently and thoroughly failed to prosecute its claims (despite having had the full opportunity to do so), where Fusite has diligently defended the case at significant

---

[18] *See* Memo. at 8.

expense, where discovery has closed and where Fusite has filed a detailed motion for summary judgment, voluntary dismissal without prejudice manifestly prejudices Fusite and is inappropriate.[19] In fact, "[u]nder such circumstances, denial of a motion for voluntary dismissal without prejudice *is the norm*."[20] "At the point where the law clearly dictates a result for the defendant, it is unfair to submit him to continued exposure to potential liability by dismissing the case without prejudice."[21] Ashton's claims should be dismissed with prejudice or its motion should be denied.

## II.  NO STAY SHOULD ENTER IN THIS CASE

Ashton has referred its claims to various federal and state enforcement agencies for one obvious purpose: to suggest that they are sincere and meritorious.  They are not.  Contrary to Ashton's representations, there is no evidence that any enforcement agency has expressed any opinion on the merits of Ashton's claims or is investigating any of those claims.  Even if there were any possibility that any enforcement agency would act on Ashton's referral, a stay would be inappropriate until some indication of further action by any such agency is given:  Ashton unwittingly admits as much:  "If the Antitrust Division decides to take action on Plaintiff's claims, this could obviate the need for determination of liability in this case."[22]  This action

---

[19]   *See Ali v. St. John Hospital*, No. 87-1087, 836 F. 2d 549, 1987 WL 30582 at **1 (6th Cir. Dec. 30, 1987) (holding that district court abused its discretion in granting dismissal without prejudice where case was pending for nearly two years, discovery was almost complete, defendant had expended substantial time and expense, and defendant had filed a summary judgment motion); *see also Fawns v. Ratcliff*, No. 95-6352, 1997 WL 377025 at **3 (6th Cir. July 3, 1997) (district court did not abuse its discretion in denying plaintiff's motion to dismiss without prejudice where action had been pending for ten months, extended discovery deadline was about to expire, some claims had already been dismissed, and long-scheduled trial date was four months away).

[20]   *Ali, supra*, 1987 WL 30582 at **1 (emphasis supplied).

[21]   *Grover, supra,* 33 F. 3d at 719 (citations omitted).

[22]   Opp. Memo. at 11.

8

should not be stayed because Ashton has made a complaint to an enforcement agency, which complaint Fusite would demonstrate has no merit.

## III. CONCLUSION

For the reasons set forth in this memorandum and Fusite's original memorandum and motion, Fusite respectfully requests that the Court amend or vacate its Order granting Ashton's Motion for Voluntary Dismissal Without Prejudice.

|  |  |
|---|---|
| |   s/ Jerome J. Metz, Jr. |
| **OF COUNSEL:** | Jerome J. Metz, Jr. (0022974) |
| Jean Y. Teteris (0023022) | Mark E. Elsener (0023013) |
| **PORTER WRIGHT MORRIS & ARTHUR, LLP** | *Trial Attorneys for Defendant Fusite* |
| 41 South High Street | *Corporation* |
| Columbus, Ohio 43215 | **PORTER, WRIGHT, MORRIS & ARTHUR LLP** |
| (614) 227-2189  (614) 421-2100 (fax) | 250 East 5th Street, Suite 2200 |
| | Cincinnati, Ohio 45202-5117 |
| Arthur F. Golden | 513/381-4700  (513) 421-0991 (fax) |
| Ronan P. Harty | |
| Arthur J. Burke | |
| **DAVIS POLK & WARDWELL** | |
| 450 Lexington Ave. | |
| New York, NY 10017 | |
| (212) 450-4000  (212) 450-3800 (fax) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing DEFENDANT FUSITE CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO AMEND OR VACATE THE COURT'S ORDER GRANTING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE has been served upon the following persons by electronic means using the court's CM/ECF system if available, or by ordinary United States mail, postage prepaid or as otherwise indicated below, this 20th day of January, 2004.

W.B. Markovits, Esq.
MARKOVITS & GREIWE CO., L.P.A.
119 East Court St., Suite 500
Cincinnati, Ohio 45202

                                               s/ Jerome J. Metz, Jr.
                                         *Attorney for Defendant Fusite Corporation*